UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JACQUELINE FLYNN,**

    **Plaintiff,**

v.                                            Case No: 6:23-cv-1890-PGB-DCI

**THERMACELL REPELLENTS,
INC. and LOWE'S HOME
CENTERS, LLC,**

    **Defendants.**

                                            /

## ORDER

This cause is before the Court on the Plaintiff's Amended Motion to Exclude Witnesses and Expert Exhibits and Motion to Exclude Speculative Opinions pursuant to *Daubert*. (Doc. 94 (the "**Motion**")). The Defendants submitted a Response in Opposition. (Doc. 98). Upon consideration, the Plaintiff's Motion is granted.

**I.  BACKGROUND**

This is a product liability case arising from damages Plaintiff sustained due to a fire in Plaintiff's home (the "**Property**"). (Doc. 1-1). On or about January 21, 2021, Plaintiff purchased Thermacell Repellents, Inc.'s ("**Thermacell**") Patio Shield Mosquito Protection Device (the "**Product**") from Lowe's Home Centers, LLC ("**Lowe's**"). (*Id.* ¶ 9). Plaintiff alleges she used the Product at the Property as intended and foreseeable by Thermacell and Lowe's (collectively, the

"**Defendants**"). (*Id.*). Shortly thereafter, the Property and its contents were damaged by a fire that Plaintiff alleges was caused by the Product. (*Id.* ¶ 10). The Plaintiff sued Defendants under negligence and strict liability theories. (*Id.* ¶¶ 11–30).

This litigation has had its fair share of stops and starts, resulting in the Court twice modifying the Case Management and Scheduling Order ("**CMSO**") to extend the deadline for Plaintiff's expert disclosure. (Docs. 25, 45, 47, 59). As such, the Plaintiff's expert witness disclosure deadline was moved from July 1, 2024, to September 3, 2024, and Defendant's expert disclosure was due October 1, 2024, with discovery closing November 4, 2024. (Docs. 25, 47). On October 17, 2024, the Defendants filed a motion to extend the deadline to complete discovery and dispositive motions. (Doc. 53). The Plaintiff did not respond, and the Court granted the Defendants' motion, extending the discovery deadline to January 6, 2025, and moving the dispositive motions deadline to February 3, 2025. (Docs. 58, 59).

On November 26, 2024—nearly two months after the Defendants disclosed their experts' reports—they produced a new "Disclosure of Potential Trial Exhibits." (Doc. 94, p. 4). The new exhibits included "EPA approvals, Safety Data Sheets, inspection reports from a Mexico factory, inspection reports from a Thai factory, and [a] patent application." (*Id.*). On January 6, 2025, in response to Plaintiff's notice of taking deposition *duces tecum*, the Defendants supplemented the opinions being offered by both of their experts to now include a previously undisclosed theory that a PIC Coil on the balcony of the residence could have been

the cause of the fire that damaged the home. (Doc. 94, p. 5; Doc. 98, pp. 7–8). The Plaintiff seeks to exclude the new opinions, including the documents relied on by Defendants' experts in reaching the opinions, as untimely and impermissible under the test for reliability outlined in *Daubert*.

## II.   LEGAL STANDARDS

### A.   The CMSO and Rules 26 and 37

Federal Rule of Civil Procedure 16 provides that "the district judge . . . must issue a scheduling order . . . [that] may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(1), (4). Rule 16(f)(1) further states that a "court may [*sua sponte*] issue any just orders, including those authorized by [Federal] Rule [of Civil Procedure] 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." *See Freckleton v. Bethune-Cookman Univ., Inc.*, Case No: 6:22-cv-906-PGB-EJK, 2023 WL 6586077, at *3 (M.D. Fla. Oct. 10, 2023) (quoting FED. R. CIV. P. 16(f)). The parties are not free to disregard the deadlines set forth in the CMSO or to negotiate new deadlines without leave of Court.

Federal Rule of Civil Procedure 26(a) and (e) require parties to timely disclose all bases of their experts' opinions. *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).[1] Rule 37(c)(1) states that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party

---

[1] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

3

is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party. *Mitchell*, 318 F. App'x at 824. Rule 26(e)(1)(A) does not define "in a timely manner," suggesting that timeliness "depend[s] on the facts and circumstances of each case." *U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009).

    **B.**    ***Daubert***

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. Rule 702 imposes an obligation on district courts to act as gatekeepers "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping role applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999).

The party offering an expert opinion has the burden of establishing three criteria by a preponderance of the evidence: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir.

4

2005); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). First, the witness must be "qualified to testify competently regarding the matters [s]he intends to address." *Rink*, 400 F.3d at 1291. Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form her opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee's notes to 2000 amendments.

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony helps where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. Conversely, there will be no need for an expert's

5

opinion where the jury can decide a disputed issue through the application of common sense or simple logic, considering the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns listed in Federal Rule of Evidence 403. *Daubert*, 509 U.S. at 591. That said, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596 (citation omitted).

### III. DISCUSSION

#### A. Failure to Comply with Rule 26 and the CMSO

Federal Rule of Civil Procedure 26(a)(2)(B) states that an expert's report must include "(i) a complete statement of all opinions the witness will express and the basis and reason for them; [and] . . . (iii) any exhibits that will be used to summarize or support them." The Amended CMSO set October 1, 2024, as the deadline for the Defendants to disclose expert reports. (Doc. 47). The Defendants admit they did not meet this deadline. (Doc. 98, p. 8). On January 6, 2025, nearly four months after the Plaintiff disclosed her experts and three months after the Defendants disclosed theirs, the Defendants presented a new opinion, to wit:

> Ryan Hart (retained expert) – may testify concerning Hart's expert report, Flynn's expert reports, potential fire sources on balcony, and safe design of Patio Shield. *See* Hart's report, CV, and testimony history. Hart has also concluded and may testify that the PIC Coil purchased by Jacqueline Flynn

6

> appears to have been in use before the fire and could potentially have caused the fire.
>
> Scott V. Gartner (retained expert) – may testify concerning Gartner's fire investigation and expert report, Flynn's expert reports, and potential fire sources on balcony. *See* Gartner's report, CV, and testimony history. Gartner has also concluded and may testify that the PIC Coil purchased by Jacqueline Flynn appears to have been in use before the fire and could potentially have caused the fire.

(Doc. 94-1, pp. 6–7).

The Defendants also admit that they found the PIC Coil in the fire debris on December 6, 2024, which was two months after their expert disclosure deadline had passed. However, they did not inform the Plaintiff of this new expert theory until one month later, on the day discovery closed. (Doc. 98, p. 7). Although the Court had twice amended the CMSO, the Defendants did not seek the Court's permission to extend the deadline for disclosing new expert opinions. They were not allowed to ignore the deadlines set by the Court. Nonetheless, the Defendants argue that revealing a new theory about the cause and origin of the residential fire is substantially justified or harmless. (*Id.* at pp. 4–9). The Court disagrees.

The Defendants argue that disclosing a new expert theory about how the fire started, which was provided months after expert reports were due and on the last day of discovery, is substantially justified for two reasons. First, the Defendants claim that when they inspected the fire scene on February 16, 2021, the cause and origin expert hired by the Plaintiff's insurance company did not allow Defendants' experts to interview the Plaintiff. (*Id.* at p. 4). Therefore, even though Defendants' experts had full access to the scene and examined fire debris from the balcony

7

where the fire began in their laboratory, Defendants state they did not know the Plaintiff purchased a PIC Coil with the Patio Shield. (*Id.*). This assertion is contradicted by the Plaintiff's deposition. On January 5, 2024, the Defendants took Plaintiff's deposition and showed her defense exhibit 3, a copy of the Lowe's receipt for the Thermacell Patio Shield and the PIC Coil. (Doc. 95-6, 76:15–21). The Plaintiff explained that the salesperson recommended that she purchase the PIC Coil as a backup to the Patio Shield. (*Id.* at 16:13–24). Accordingly, the Defendants were on notice from January 5, 2024, nine months before Defendants' experts were disclosed, that Plaintiff purchased the PIC Coil. Additionally, the PIC Coil stand was found in the debris collected from the balcony and inspected by the Defendants.

On September 6, 2024, about a month before their expert reports were due, the Defendants sent Mr. Gartner, the defense cause and origin expert, the Plaintiff's deposition transcript. (Doc. 98, p. 5). Unfortunately for the Defendants, Mr. Gartner did not read the Plaintiff's deposition or the attached exhibits before issuing his expert report on October 1, 2024. (*Id.*). The Defendants claim that instead of reading the discovery, Mr. Gartner relied on a conversation he had in February 2021 with the expert retained by the Plaintiff's insurance company and defense counsel's apparently incomplete summary of the Plaintiff's deposition. (*Id.*). The Defendants acknowledge that had Mr. Gartner read the Plaintiff's deposition, he would have known that she purchased the PIC Coil with the Patio

8

Shield on the afternoon of the fire. (*Id.*). For unknown reasons, Mr. Gartner did not read the Plaintiff's deposition until November 26, 2024. (*Id.*).

The Defendants also waited until October 22, 2024—three weeks after the deadline for Defendants' expert reports—before deposing the insurance company's cause and origin expert. (*Id.*). They claim they first learned that Plaintiff purchased the PIC Coil with the Patio Shield during that deposition. (*Id.*). To summarize: the insurance company's expert was deposed on October 22, 2024, and Mr. Gartner received this deposition on November 5, 2024, but did not read it until November 21, 2024. (*Id.*). When Mr. Gartner finally read the Plaintiff's deposition on November 26, 2024, he informed defense counsel that the PIC Coil could, in theory, have caused the fire if it had been used. (*Id.* at pp. 5–6). However, the new theory was not disclosed to the Plaintiff until January 6, 2025.

Failing to thoroughly review the evidence about the purchase of other fire-starting products on the balcony does not justify the untimely disclosure of a new expert opinion. Likewise, conducting fact discovery after the expert deadline does not excuse late disclosure of a new opinion. The purpose of expert reports and their deadlines is to notify the opposing party of what they need to address at trial. Rule 26(e) requires a party to supplement a report if it is found to be "incomplete or inaccurate." FED. R. CIV. P. 26(e)(1)(A). It is not intended as a way for a party's expert to perform additional work or to provide new opinions that could have been timely if the expert had been more diligent. Moreover, the defendants have not explained why they waited from the deposition on October 22, 2024, until January

9

6, 2025, to disclose Mr. Gardner and Mr. Hart's new opinions regarding the possible cause of the fire.

Nor is the late disclosure of a new opinion regarding the potential cause of the fire harmless.[2] The Plaintiff's experts have already provided their opinions about the fire's cause, and if allowed to stand, they would need to produce new reports to address the Defendants' new theory. Issuing new expert reports could lead to a request to depose the experts and possibly result in a new deadline for filing *Daubert* motions. Moreover, the Plaintiff is entitled to rely on the Defendants' answers to interrogatories, which do not address this new theory that the PIC Coil might have caused the fire. The Defendants' untimely disclosure of a new expert opinion is not substantially justified, nor is it harmless, and the new opinion and all documents that support it are excluded under Rule 37(c)(1). *See* FED. R. CIV. P. 37(c)(1).

## B.   *Daubert*

The Plaintiff also seeks to exclude the new opinion that the PIC Coil purchased by Plaintiff appears to have been in use before the fire and could have been an ignition/fire source. (Doc. 94, p. 7). While the Plaintiff's briefing on this issue is less than ideal, once challenged, the party presenting the expert has the burden of establishing three criteria by a preponderance of the evidence:

---

[2]   The Defendants contend that even though discovery closed on January 6, 2025, pursuant to the Third Amended CMSO, the parties agreed to allow Plaintiff to depose Defendants' experts after the deadline, and so the Plaintiff could have explored the new opinion. (Doc. 98, p. 6). Defendants miss the point that the parties are not permitted to disregard the deadlines set forth in the CMSO or negotiate an extension not approved by the Court.

qualification, reliability, and helpfulness. *See McClain,* 401 F.3d at 1238. The Defendants fail to address the three-pronged *Daubert* analysis. Instead, the Defendants simply assert that the PIC Coil evidence is "a key, and perhaps determinative, part of this case." (Doc. 98, p. 14). Defendants do not discuss whether the experts used sufficiently reliable scientific methods or principles to form their opinions, and they fail to attach the experts' reports, which should detail their experience, qualifications, and the materials relied on in forming their opinions. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *see also U.S. Steel Corp v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived). Based on the record before the Court, at best, the Defendants' experts speculate that the PIC Coil could have caused the fire. More is required. Accordingly, the Court grants the Plaintiff's *Daubert* challenge as to Mr. Gartner and Mr. Hart.

### IV.  CONCLUSION

For these reasons, Plaintiff's Amended Motion to Exclude Witnesses and Expert Exhibits and Motion to Exclude Speculative Opinions pursuant to *Daubert* (Doc. 94) is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on July 21, 2025.

11

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties