UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JACQUELINE FLYNN,**

        **Plaintiff,**

v.                                    **Case No: 6:23-cv-1890-PGB-DCI**

**THERMACELL REPELLENTS,
INC., and LOWE'S HOME
CENTERS, LLC,**

        **Defendants.**
_____/

## ORDER

This cause is before the Court on the Defendants' *Daubert* Motion to Exclude Mr. Lentini's Opinions. (Doc. 97 (the "**Motion**")). The Plaintiff submitted a Response in Opposition. (Doc. 99). Upon consideration, the Defendants' Motion is denied.

**I.    BACKGROUND**

The procedural history of this case has been discussed in other Orders and need not be repeated herein. Pertinent to this Motion, the Defendants move to exclude Mr. Lentini's opinion that the Thermacell Patio Shield was defective and caused the fire as unsupported by evidence and the product of unreliable methodology. (Doc. 97, p. 2). They also seek to exclude Mr. Lentini's approval of the "investigation and opinions" of Mr. Dugan, Amica's fire investigator, as cumulative, unreliable, and irrelevant. (*Id.*). In addition, Defendants move to

exclude various other opinions supporting Mr. Lentini's ultimate conclusion that the Thermacell Patio Shield caused the fire. (*Id.*).

## II.   LEGAL STANDARDS

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as a gatekeeper, to ensure that all scientific testimony or evidence admitted is not only relevant, but reliable. District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). That said, usually "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's notes to 2000 amendment. And the district court's role as a gatekeeper "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations and quotation marks omitted). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Id.* On the contrary, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Within this context, the party

2

offering an expert opinion has the burden of establishing three criteria: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

First, the witness must be "qualified to testify competently regarding the matters [s]he intends to address." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990). Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form her opinions. *Rink*, 400 F.3d at 1292 (quoting *City of Tuscaloosa*, 158 F.3d at 562). The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94.

In forming the basis of the opinion, an expert may rely on "facts or data in the case that the expert has been made aware of or personally observed." FED. R.

3

EVID. 703. To that end, the facts or data on which an expert forms his opinion need not be admissible for his opinion to be admitted as long as these facts and data are of the type that experts in his field normally rely on in forming an opinion on the subject at hand. *Id.* Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 593.

### III. DISCUSSION

#### A. Defendants' Objections

The Defendants do not dispute Mr. Lentini's qualifications, which are substantial. (*See* Doc. 97-5, pp. 16–27). They seek to exclude his opinion that the Thermacell Patio Shield experienced a manufacturing defect causing the fire. (Doc. 97, pp. 3–12, 16–17). They accurately summarize Mr. Lentini's experiment, which involved removing "the orifice disc covering the stem assembly at the air intake window on the regulator [of the Patio Shield], thereby creating a butane leak. . . . and apply[ing] a piloted flame to ignite the butane." (*Id.* at pp. 9–10). The Defendants argue that Mr. Lentini did not use "sufficiently reliable" scientific methods or principles to support his opinions (*Id.* at p. 10). Specifically, the Defendants claim that Mr. Lentini's opinion that the orifice disc was left out during manufacturing is speculative (*Id.*). They further argue that Mr. Lentini's speculation about the regulator fire igniting the Patio Shield and subsequently other unidentifiable combustible materials on the balcony is unfounded (*Id.*). In support of their Motion, the Defendants point to their expert's failure to ignite the

4

butane leak caused by removing the orifice using the ignition source in the Patio Shield (*Id.* at p. 11).

     Mr. Lentini presents four opinions in his expert report. First, he states that the fire started on the second-floor balcony where the Thermacell Patio Shield was located. (Doc. 97-5, p. 4). Second, he explains that if the Thermacell unit catches fire, its components will burn vigorously and act as a capable ignition source for nearby combustibles. (*Id.*). Third, he suggests that the most probable cause of the fire is a malfunction of the Thermacell unit due to a manufacturing defect. (*Id.* at p. 6). Fourth, he indicates that the most likely manufacturing defect is the absence of an orifice. (*Id.*). Mr. Lentini supports each of these opinions with their respective bases. (*Id.* at pp. 4–13). The Defendants seem to argue that neither Mr. Lentini's opinions nor their supporting bases can be stated with certainty. Before examining Mr. Lentini's opinions in detail, it is important to note that "certainty is not required to provide expert testimony." *Benavides v. Tesla, Inc.*, No. 21-cv-21940-BLOOM/Torres, 2025 WL 1768469, at *14 (S.D. Fla. June 26, 2025); *see also Rappuhn v. Primal Vantage Co., Inc.*, No. 23-10050, 2024 WL 2930448, at *4–5 (11th Cir. June 11, 2024) ("The inquiry under *Daubert* is not whether the expert's assessment is incontrovertible. '*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct.'" (quoting *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

**B.     Mr. Lentini's opinions**

*1.     Methodology*

The Plaintiff correctly states that the focus of the *Daubert* inquiry is on the methods used by the experts, not their conclusions. (Doc. 99, p. 6). Mr. Lentini conducted experiments to demonstrate that if the orifice was omitted from the Thermacell Patio Shield during manufacturing, a flame would appear near the intake and contact the bottom of the combustible heat box. (*Id.* at p. 7). Mr. Lentini testified at deposition that he first tested whether the Patio Shield could catch fire if turned on its side or dropped from table height. (Doc. 97-1, 35:6–23). Even when Mr. Lentini dropped the unit onto a wooden deck, it did not catch fire, and the flame extinguished. (*Id.* 36:15–37:2). He then calculated that with an orifice, the device does not emit enough butane to start a fire. (*Id.* 38:2–8, 39:18–19). Mr. Lentini removed the orifice, held a Bic lighter flame next to the air intake, and the device immediately ignited. (*Id.* 40:1–11, 42:19–21). His calculations also indicated that about 500 BTUs are released from the device, making it a capable ignition source. (*Id.* 29:9–23; Doc. 97-5, pp. 4, 6–13).

Once Mr. Lentini's experimentation established that the Patio Shield was a competent ignition source, Mr. Lentini ruled out other possible causes for the fire. (Doc. 97-5, p. 4). Mr. Lentini opines that the Thermacell Patio Shield was the only thing on the second-floor balcony that could have caused the fire. (Doc. 97-1, 17:7–20). He explained that electrical outlets generally do not cause fires. (*Id.* 21:18–24). Mr. Lentini also ruled out the overhead lights as a competent fire source

6

because they are engineered to prevent them from causing a fire. (*Id.* 22:24–23:3). Similarly, he ruled out the television on the patio and the ceiling fan. (*Id.* 21:25–22:11, 22:24–23:8).

Mr. Lentini observed that common sense also suggests the Thermacell Patio Shield caused the fire. He stated, "[i]f there was an electrical failure, it is a major coincidence. . . . Almost astronomically impossible coincidence that a latent [electrical] defect decided to manifest itself during that short period of time that the Thermacell unit was burning for the first time." (*Id.* 18:10–16). Mr. Lentini concludes that either the Thermacell unit self-destructed and caused the fire, or "a latent defect of some kind unspecified in the residence manifested itself as a catastrophic fire at exactly the same time that Mrs. Flynn turned this unit on for the first time." (*Id.* 17:21–18:3).

In summary, Mr. Lentini tested the Thermacell unit to see if it could serve as a competent fire source. He found that tipping the unit on its side or dropping it from a patio table height did not produce a reliable fire, ruling out the chance of an accidental fire caused by a gust of wind. Mr. Lentini also eliminated the possibility of an electrical fire originating from an outlet, overhead lights, or the television on the patio. He then concluded that a manufacturing defect, such as a missing orifice, allowed enough butane to be released to ignite the device, which broke the glass tabletop and set fire to other combustible materials, including the lounge chairs and cushions. The Court therefore finds that Mr. Lentini's methodology is sufficiently reliable to meet *Daubert* standards.

7

### 2. *Mr. Lentini's Opinions on Origin*

The Defendants also contest opinions provided by Mr. Lentini that do not directly relate to his testing. They aim to exclude Mr. Lentini's opinion that the fire originated on the balcony where the Thermacell unit was located. (Doc. 97, p. 13). The Defendants argue that because no remnants of the Patio Shield were found in the fire debris, and because they believe Mr. Dugan's method for determining the fire's origin is flawed, Mr. Lentini's opinion should be excluded. (*Id.* at pp. 13–14). The Court notes that when this argument was made, the Defendants had not yet benefited from the Court's Order denying their *Daubert* challenge to Mr. Dugan's methodology and opinions. Nonetheless, as previously discussed, Mr. Lentini ruled out electrical causes for the fire, leaving the Patio Shield as the source. Since Mr. Lentini's methodology is sound, his conclusion that the fire started on the balcony at the Thermacell unit remains valid.

The Defendants also seek to exclude Mr. Lentini's opinion that Chief Wienckowski and Mr. Dugan used generally accepted methods to conclude that the fire started at the location of the Thermacell unit. (*Id.* at pp. 14–15). An expert can rely on "facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. Mr. Lentini can rely on Mr. Dugan's report, and in doing so, may explain why these facts and data are the types typically relied upon by experts in his field when forming an opinion, including the reliability of Mr. Dugan's methodology. While this may bolster Mr. Dugan's testimony, it is not the sole reason for affirming the methodology. As for Chief

8

Wienckowski, the Defendants argue that Mr. Lentini cannot offer an opinion on his conclusions because the Chief's opinions are inadmissible. (Doc. 97, p. 14). The Court previously found that his opinion that the fire started on the second-floor balcony (Doc. 95-7, 8:22–23, 26:13–25), that it was accidental, and that there is no information suggesting this was an electrical fire (*Id.* 27:23–28:22), are admissible as lay witness opinions. (*See* Doc. 111). Mr. Lentini may testify on how these lay witness opinions are used in forming his own opinions.

The Defendants' next objection is to Mr. Lentini's opinion that credible eyewitnesses placed the origin of the fire on the second-floor balcony. (Doc. 97, p. 15). The Defendants are correct that credibility determinations are for the jury. However, they concede that "[n]o one disputes that the fire began on the balcony." (*Id.* at p. 13). Therefore, Mr. Lentini's opinion that the fire started on the second-floor balcony is uncontested. The Defendants' Motion to exclude an opinion on a point they admit to makes no sense and is denied. If Mr. Lentini vouches for the credibility of witnesses, the Defendants are free to object if necessary.

Defendants also seek to exclude Mr. Lentini's opinion that there were no other potential sources of ignition on the balcony as unsupported by Mr. Dugan's investigation. (*Id.* at p. 15). The Court overruled the Defendants' *Daubert* Motion to exclude Mr. Dugan, finding his methodology sound. Additionally, the Court finds Mr. Lentini's methodology, which included ruling out an electrical fire, to be sound. Therefore, the Motion is denied.

Because the Court finds Mr. Lentini's opinions on the cause of the fire to be sufficiently reliable and helpful, the Defendants' request to exclude his opinion that the Thermacell unit will burn vigorously and provide a competent ignition source, and that the likely cause of the fire is a manufacturing defect, is denied. The Defendants may test these opinions via vigorous cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596; *Quiet Tech.*, 326 F.3d at 1345–46 (quoting *Daubert*, 509 U.S. at 596).

## IV. CONCLUSION

For these reasons, the Defendants' *Daubert* Motion to Exclude Mr. Lentini's Opinions (Doc. 97) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida, on August 1, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties